The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is a duly qualified self-insured with Hewitt Coleman and Associates serving as a servicing agent.
4. The alleged date of injury in Industrial Commission File Number 368209 is September 1, 1993.
5. The alleged date of injury in Industrial Commission File Number 510139 is January 5, 1995.
6. An Industrial Commission Form 22 was submitted from which an average weekly wage can be determined.
7. Plaintiff's employment records with defendant-employer were stipulated into evidence. These records consist of eighteen pages of documentation.
8. Plaintiff's medical records were stipulated into evidence. This documentation consists of records from: Nash General Hospital, Nash Orthopaedic Associates, Rocky Mount Neurological Associates, Carolina Urgent Care, Rocky Mount Orthopedics, Scarborough Chiropractic Center, Carolina Regional Orthopedics, and Matthews Rehabilitation Services.
9. The issues before the undersigned are: (i) Whether plaintiff sustained an injury by accident to his lower back and groin on September 1, 1993? (ii) Whether plaintiff sustained an injury by accident to his back on January 5, 1995? and, (iii) If so, what compensation, if any, is due plaintiff?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-four years old. Plaintiff is married with two children, ages fourteen and one year and two months. Plaintiff has a high school education. Although he initially testified that he had completed an Associates Degree in electronics, he later stated, however, that he hoped to complete his Associates Degree in electronics in August 1997.
2. In 1989, plaintiff began his employment with defendant-employer as a material handler/service operator. Plaintiff's duties included moving fabric either manually or by a fork lift to prevent the warehouse from becoming clogged. If the warehouse became clogged, production would stop.
3. Plaintiff worked forty hours per week on the second shift for defendant-employer.
4. Plaintiff alleged that, on September 1, 1993, his supervisor, James Wester, requested that plaintiff manually stack bolts of cloth to resolve a backup on the production line. Plaintiff further alleges that while stacking this cloth he felt a pull in his right side and a sharp pain. Plaintiff alleges that he was moving jet wash cloth which is heavier cloth than other types of fabric that would be coming down the production line.
5. Plaintiff alleges that he immediately notified Mr. Wester of this problem.
6. James Wester did ask plaintiff to assist him to move bolts of cloth, however, the bolts to be moved were not the heavier jet wash cloth. Contrary to plaintiff's testimony, plaintiff did not immediately notify Mr. Wester of any problems that occurred while lifting. However, when plaintiff later indicated he had a problem, Mr. Wester accompanied plaintiff to Nash General Hospital Emergency Room.
7. Plaintiff, complaining of right rib cage and lower back pain, was diagnosed at the Nash General Hospital Emergency Room as having a back strain. Plaintiff was restricted to no lifting that evening, and to light duty for one day on September 2, 1993.
8. James Wester instructed plaintiff that he must have prior authorization from Mr. Wester or from the company personnel department regarding any further medical treatment, that any additional treatment would be at Carolina Urgent Care and not Nash General Hospital, and that medical bills would not be paid without prior authorization.
9. Contrary to plaintiff's testimony, plaintiff returned to work on September 2, 1993. However, that night he returned to Nash General Hospital Emergency Room, rather than Carolina Urgent Care, where he was referred to E. O. Marsigli, MD, an orthopedic surgeon. Without authorization from his employer, plaintiff consulted Dr. Marsigli on September 3, 1993, regarding difficulty controlling his urine.
10. Again, without prior authorization from his employer, plaintiff consulted urologist, Joseph D. Whisnant, Jr., MD. Upon examination, Dr. Whisnant opined that plaintiff's neurological problems were NOT (emphasis added) related to a possible back injury, but were due to a urologic inflammatory process. After plaintiff took the prescribed antibiotic, Cipro, his condition improved. Dr. Whisnant had set up a follow-up appointment for plaintiff, which plaintiff did not keep.
11. Plaintiff continued his unauthorized treatment with Dr. Marsigli. He was discharged to regular unrestricted work on September 21, 1993, upon plaintiff's report of being "completely pain-free." Despite plaintiff's allegation that he had been out of work two and one-half to three months following the alleged injury, plaintiff had already returned to regular work by September 20, 1993.
12. While plaintiff was obtaining his unauthorized medical treatment, he had also presented to Carolina Urgent Care, as his employer had initially directed. He was seen there by Dr. Heter who returned plaintiff to regular work without any restrictions on September 20, 1993.
13. On January 5, 1995, plaintiff worked the second shift under the supervision of James Wester, who instructed plaintiff to load cloth on the trucks on several occasions. Plaintiff requested additional help from Mr. Wester. While Mr. Wester was walking with plaintiff to his work station to investigate the situation, plaintiff became verbally abusive and insubordinate towards Mr. Wester.
14. Despite requests from Mr. Wester to cease the insubordinate behavior, plaintiff continued and was instructed to leave the premises by Mr. Wester. Mr. Wester had to instruct plaintiff to leave three times before plaintiff finally left the warehouse. At no time prior to his leaving the premises, did plaintiff report a back injury to Mr. Wester.
15. At approximately 10:30 p.m. on the same evening — January 5, 1995 — plaintiff telephoned and spoke to Mr. Wester alleging that he had injured his back while moving a truck of cloth earlier that evening.
16. Defendant-employer arranged for plaintiff to be seen by Greg Nelson, MD, an orthopaedic surgeon. However, plaintiff presented to Dr. Nelson without his prior medial records. While at Dr. Nelson's office, plaintiff was belligerent and rude to Dr. Nelson's staff.
17. Diane Bowen, Human Resources Assistant for employer-defendant, spoke with plaintiff on numerous occasions regarding his medical treatment. Plaintiff was reminded about the prior authorization prerequisite to recover treatment costs under Worker's Compensation. Plaintiff was belligerent and rude with Ms. Bowen, also.
18. Plaintiff had previously received counseling sessions concerning his work on April 13, 1991, May 11, 1991, July 11, 1991, and February 17, 1994.
19. Plaintiff was subsequently terminated from his employment for being out of work for three consecutive days without a doctor's excuse.
20. Plaintiff's testimony concerning the alleged accidents on September 1, 1993, and January 5, 1995, the subsequent medical treatment, his educational background, and his criminal record was inconsistent.
21. The undersigned are unable to accept plaintiff's testimony as credible based upon plaintiff's testimony, his demeanor as observed by the Deputy Commissioner and other credible testimony of record.
22. There is insufficient medical evidence of record from which to determine by its greater weight that plaintiff's complaints relating to his back and groin were caused by or related to the alleged incidents on September 1, 1993, or January 5, 1995.
 ***********
Considering the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
Plaintiff has failed to prove by the greater weight of the evidence that he sustained an injury by accident arising out of or in the scope of his employment with defendant-employer on either September 1, 1993, or January 5, 1995, or that plaintiff sustained a specific traumatic incident of work assigned on either September 1, 1993, or January 5, 1995. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based on the foregoing Findings of Fact and Conclusion of Law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and is, DENIED.
2. Each side shall bear its own costs.
 S/ ________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ CHRISTOPHER SCOTT COMMISSIONER
DCS/jlr